OPINION
Anthony L. McComb appeals from a judgment of the Greene County Court of Common Pleas, which overruled his motion for jail-time credit.
McComb was indicted on November 22, 1996 on one count of possession of cocaine, a fifth degree felony in violation of R.C.2925.11(A). On January 17, 1997, McComb entered a plea of guilty to the charge in exchange for the state's recommendation of "community control sanctions with treatment." The trial court accepted his guilty plea and imposed three years of community control sanctions, including "[d]rug treatment through a program such as `The Community Network,'" urinalysis, and intensive supervision, to be monitored by the Greene County Adult Probation Department. The sentencing entry stated that a violation of the sentence "may lead to a longer or more restrictive sanction for [McComb], up to and including a prison term of up to 11 months." McComb received thirty-three days jail time credit.
On December 11, 1997, the probation officer filed a motion to have McComb arrested for probation violations, and the trial court granted the motion. On December 19, 1997, the trial court found that McComb had violated terms of his probation, ordered him to continue serving the community control sanctions, and added the following condition:
 I will successfully complete inpatient treatment in a long term, residential treatment program such as The Talbert House. I will not terminate nor cause myself to be terminated without the prior approval of the Adult Probation Department. I will remain in the Greene County Jail until a bed becomes available.
On February 10, 1998, the trial court ordered that McComb be transported to Talbert House before 4:00 p.m. the next day. McComb was released from Talbert House on June 9, 1998 upon his completion of the treatment program.
The probation officer filed another motion to have McComb arrested for probation violations on August 24, 1998, and the trial court granted the motion. Following a hearing, the trial court found that McComb had violated the terms of his probation and sentenced him to eleven months imprisonment, crediting him for one hundred six days of jail time served and "all time previously served at the state institution." On December 16, 1998, McComb filed a motion for jail-time credit, which is not contained in the record before us, for his time spent at Talbert House. The trial court overruled the motion on December 18, 1998. McComb filed a notice of appeal, and he raises three assignments of error, two of which we will address together.
 I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION FOR JAIL-TIME CREDIT BY RELYING ON R.C. 2929.01(V) AS A MEANS FOR DEFINING "JAIL," AS APPOSED [SIC] TO USING R.C. 1.05(D)(2) WHICH DEFINES IMPRISONMENT.
 II. THE TRIAL COURT ERRED BY FAILING TO CONDUCT A HEARING TO DETERMINE IF THE NATURE OF THE TALBERT HOUSE PROGRAM PLACED RESTRICTIONS ON THE PARTICIPANTS THAT WERE SO STRINGENT AS TO CONSTITUTE "CONFINEMENT" AS CONTEMPLATED BY THE LEGISLATURE.
McComb contends that the trial court erred in concluding, without having conducted a hearing, that he was not entitled to credit for his time undergoing treatment at Talbert House because he had not been incarcerated within the meaning of R.C.2929.01(V).
A trial court imposing community control sanctions must notify the offender that a violation of the conditions thereof may result in the imposition of longer time under the same sanction, a more restrictive sanction, or a specified prison term, as selected by the trial court from the range of prison terms for the offense pursuant to R.C. 2929.14. R.C. 2929.19(B)(5). If the offender violates the conditions and the sentencing court imposes a prison term, that term must be within the range of prison terms available for the offense giving rise to the community control sanctions and must not exceed the prison term specified in the notice required by R.C. 2929.19(B)(5). See R.C. 2929.15(B).[1] The trial court may reduce the prison term "by the time the offender successfully spent under the sanction that was initially imposed." R.C. 2929.15(B). Former Crim.R. 32.2(D) provided, in pertinent part:
 In addition [to fowarding any presentence investigation report], if the defendant is committed to a penal or reformatory institution, the court shall forward a statement of the number of days confinement which the defendant is entitled by law to have credited to his minimum and maximum sentence.
This subdivision was deleted, without explanation, from the July 1, 1998 amended version of Crim.R. 32.2. Currently, the only requirement that trial courts calculate the number of days for jail-time credit is set forth in Ohio Adm. Code 5120-2-04(B), which states:
 The sentencing court determines the amount of time the offender served before being sentenced. The court must make a factual determination of the number of days credit to which the offender is entitled by law and, if the offender is committed to a state correctional institution, forward a statement of the number of days confinement which he is entitled by law to have credited. This information is required to be included within the journal entry imposing the sentence or stated prison term.
Although no statute or criminal rule requires trial courts to calculate the number of days of jail-time credit, R.C. 2967.191, R.C. 2949.08(C), and R.C. 2949.12 provide for the mandatory crediting of such time. R.C. 2967.191 provides that a prison term shall be reduced "by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced," including pre-trial confinement in lieu of bail, confinement for competency and sanity examinations, and confinement while awaiting transportation to the place for serving the prison term. R.C. 2967.191. See, also, R.C. 2949.08(C) and R.C. 2949.12.
In State v. Herd (May 5, 1999), Montgomery App. No. 17385, unreported and State v. Reichelderfer (Apr. 30, 1999), Montgomery App. No. 17445, unreported, we recognized the repeal of the mandatory language of Crim.R. 32.2(D) but encouraged trial courts to continue calculating the number of days served prior to sentencing for the benefit of the Department of Rehabilitation and Corrections, which needs such information to fulfill its duty set forth in R.C. 2967.191. We expressed that "[a]lthough we cannot say that a trial court is required by law to recite the amount of pre-sentence jail time in its termination entry, that is, in our view, clearly the better practice." Reichelderfer, supra. Furthermore, in State v. Gooch (May 7, 1999), Greene App. Nos. 98-CA-105 and 98-CA-106, unreported, a case to which amended Crim.R. 32.2 applied, we cited State v. Gregory (1995), 108 Ohio App.3d 264, which was decided under former Crim.R. 32.2(D), in remanding the case to the trial court to calculate the number of days of the defendant's pre-trial confinement.
The trial court in this case did calculate the number of days to be credited against McComb's sentence for traditional types of confinement; however, it overruled McComb's motion for credit for time spent in Talbert House because McComb "was not incarcerated as defined in Ohio Revised Code Section 2929.01(V)" and "was receiving treatment and therefore not entitled to jail time credit."
The state argues that jail-time credit is not available for time served in a treatment program, such as Talbert House, pursuant to State v. Nagle (1986), 23 Ohio St.3d 185, syllabus, which states:
 When a defendant's sentence has been suspended and he has been placed on conditional probation pursuant to R.C. 2951.04 and later violates the terms of such probation, the trial court is not required to credit time spent in a rehabilitation facility against any sentence originally imposed.
In Nagle, 23 Ohio St.3d at 186-187, the supreme court commented on the legislative examples of "confinement" in R.C. 2949.08(C), stating:
 It is instructive to note that in none of these specified circumstances may the defendant leave official custody of his own volition. In contrast, the rehabilitation facility imposed restrictions upon appellee's freedom of action to the extent communications with family or friends were restricted or monitored. Yet, appellee's freedom of movement was not so severely restrained, i.e., he indeed did voluntarily depart the facility.
Contrary to the state's interpretation of Nagle, it has been held that "neither the syllabus nor the dicta in Nagle supports a finding that a person is never entitled to jail-time credit for time spent in a treatment facility while on probation." State v.Jones (1997), 122 Ohio App.3d 430, 432. Rather, trial courts "must review the nature of the program to determine whether the restrictions on the participants are so stringent as to constitute `confinement' as contemplated by the legislature." Id. at 432. See, also, State v. James (1995) 106 Ohio App.3d 686, 689 ("The focus of the statute [R.C. 2949.08(C)] is on `confinement,' which is followed by the broad modifier `for any reason.' The statute was obviously intended to encompass a wide range of situations and facilities."). We disagree with the state's assertion that theJones position "clearly conflicts" with the supreme court's opinion in Nagle because in our judgment, Nagle does not prohibit jail-time credit for time spent in a rehabilitation facility but merely states that trial courts are not required to credit such time.
The trial court in Jones overruled the defendant's motion for jail-time credit for time spent in a rehabilitation program, and because the appellate court could not conduct a meaningful review of the nature of the program based on the record before it, the case was remanded for a hearing on the nature of Jones's participation in the program and whether he was "confined" within the meaning of the statute. Jones, 122 Ohio App.3d at 431-432. Similarly, the record in this case provides minimal information on the nature of the Talbert House program. From the trial court's December 19, 1997 judgment entry, we know that McComb was ordered to complete inpatient treatment at a long-term residential treatment program such as Talbert House and that he was prohibited from terminating his treatment without prior approval from the adult probation department. The trial court's order to convey McComb from the Greene County Jail to Talbert House in Cincinnati stated that he "will remain at the Institution until treatment is completed." Without further information on the nature of the treatment program, we are unable to determine the severity of the restrictions placed upon McComb's freedom and thus, we cannot conduct a meaningful review of whether McComb was "confined" within the meaning of the term as intended by the legislature so as to be entitled to jail-time credit for time spent at Talbert House. Accordingly, we must remand this matter to the trial court for reconsideration of McComb's motion in light of the definition of "confinement" as contained in the above cited statutes and elaborated upon in Nagle. On remand, the trial court should focus on whether McComb was confined while at Talbert House rather than whether Talbert House satisfied the R.C. 2929.01(V) definition of a "jail." Depending on the trial court's familiarity with the Talbert House program, a hearing may or may not be required to make the determination of whether McComb was confined while undergoing treatment at Talbert House. The trial court should conduct an evidentiary hearing if its knowledge of Talbert House program does not enable it to readily determine whether participation in the program does or does not constitute confinement. Regardless of whether it conducts a hearing, if the relief requested is denied, the trial court should provide an explanation of why McComb's participation in the Talbert House program was not confinement. Of course, should the trial court determine that participation in the Talbert House program is not confinement, it could nevertheless consider McComb's motion as one for reduction of prison term pursuant to R.C. 2929.15(B).
The first assignment of error is sustained. The second assignment of error is overruled.
 III. THE TRIAL COURT ERRED IN NOT CONSIDERING THE RAMIFICATIONS OF THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 2 OF THE OHIO STATE CONSTITUTION.
McComb contends that the trial court deprived him of his equal protection rights by overruling his motion for jail-time credit.
It is well settled that we need not reach constitutional issues unless absolutely necessary. In re Miller (1992), 63 Ohio St.3d 99,110; In re Boggs (1990), 50 Ohio St.3d 217, 221. Based on our determination that the trial court erred in failing to consider whether McComb was "confined" within the meaning of the above cited statutes, we need not reach McComb's equal protection claim.
The third assignment of error is overruled.
The judgment of the trial court will be reversed and remanded for further proceedings in accordance with our discussion of the first assignment of error.
GRADY, P.J. and YOUNG, J., concur.
Copies mailed to:
Robert K. Hendrix
Anthony L. McComb
Hon. M. David Reid
[1] R.C. 2929.15(B) actually refers to R.C. 2929.19(B)(3), but we believe that the reference is a misprint and that the correct reference is to R.C. 2929.19(B)(5).